No. 45,932

STATE OF KANSAS, *Appellee,* v. ELDON HINTON, *Appellant.*

(479 P. 2d 910)

Opinion filed January 23, 1971.

*Tom Crossan,* of Independence, argued the cause and was on the brief for the appellant.

*Monte K. Heasty,* County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, and *Kenneth D. David,* Assistant County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a criminal action wherein the defendant was convicted of driving while under the influence of intoxicating liquor by a jury. He was sentenced to a term of ninety days in the county jail of Montgomery County, Kansas, and fined $100. Appeal has been duly perfected.

The controlling question on appeal is whether the trial court erred in permitting the state to cross-examine various character witnesses on assumed prior arrests and convictions of the defendant for drunkenness and drunken driving.

On the 15th day of March, 1969, Eldon Hinton (defendant-appellant) was arrested by a highway patrol officer a few miles north of Coffeyville, Kansas, on U. S. Highway No. 169. He was charged with driving while under the influence of intoxicating liquor and tried in the court of Independence on the 29th day of April, 1969, and convicted. He perfected an appeal to the district court of Montgomery County, Kansas, and on the 10th day of October, 1969, was tried and convicted by a jury of driving while under the influence of intoxicating liquor. His motion for a new trial was duly filed, argued and overruled.

It is unnecessary to review the evidence in the case concerning the condition of the appellant at the time of his arrest by the highway patrol officer. The evidence pertaining to his driving while under the influence of intoxicating liquor is more than adequate to sustain a finding of guilty, and the appellant does not challenge the evidence in this regard.

After the appellant's arrest by the highway patrol officer and on

the trip to the Montgomery County jail, the patrol officer asked the appellant if he would submit to a blood alcohol test, and the appellant answered in the negative. After explaining the consequences for failure to submit to a blood test the appellant said he did not want such test. He gave as his reason that "he was arrested once before and had a blood test and didn't want no more of that." As a result there was also a hearing before the examiner of the motor vehicle department of the state of Kansas respecting the appellant's refusal to submit to a blood test.

The evidence offered by the appellant consisted primarily of calling character witnesses who testified as to his good reputation within his community, both as to being a peaceful and law-abiding citizen and his good reputation for sobriety and industry.

On the cross-examination of John Masavero, a character witness for the appellant, the following inquiry was made by the county attorney:

"Q. In arriving at your opinion, sir, *do you know* whether or not this defendant has twice been arrested previously for being drunk?
"MR. CROSSAN: We object to that as assuming a proposition not in evidence.
"THE COURT: The objection is sustained.
"Q. *Do you know* whether or not he has?
"A. *I did not know, sir.*" (Emphasis added.)

A similar inquiry was made by the prosecuting attorney on the cross-examination of Richard Harper, a character witness, as follows:

"Q. In arriving at your opinion, I will ask you *if you knew* or considered that he had twice previously been arrested *for drunken driving.*" (Emphasis added.)

(Following objection by counsel for the appellant, proceedings were conducted in chambers out of the presence of the jury, whereby the court permitted the prosecuting attorney to rephrase the question. Counsel for the appellant moved for a mistrial, and it was overruled by the trial court. The jury returned and the following proceedings were then had in the presence of the jury:)

"THE COURT: Strike the last question, Mrs. Burris. You may proceed, Mr. Heasty.
"Q. Mr. Harper, I will ask you that, *if you have heard* as a part of the reputation that you have testified about concerning sobriety, that Mr. Hinton has been *convicted or been charged with drunken driving?*
"A. No, sir, I never have." (Emphasis added.)

On cross-examination of Pete Murray, a character witness for the appellant, the prosecuting attorney asked:

"Q. Mr. Murray, did you ever hear in the community that he had twice been arrested for being drunk—"

(Objection interposed at this point by counsel for the appellant was overruled.)

"A. I did not hear of any other acts. *This is the first act like this that I have heard that he did."* (Emphasis added.)

During the cross-examination of Doris Hinton, the appellant's wife and a character witness, the prosecuting attorney inquired:

"Q. *Do you know*, Mrs. Hinton, whether or not your husband was arrested in Wichita, Kansas, on January 20, 1965, for being drunk—

"MR. CROSSAN: Now, just a minute, we object for the reason that it assumes a proposition not in evidence and we ask that the county attorney be admonished for misconduct.

"THE COURT: Overruled.

"MR. CROSSAN: At this time the defendant moves for a mistrial because of the misconduct of the county attorney.

"THE COURT: The motion is overruled.

"A. *No, I don't.*

"Q. Did he never mention that to you, whether or not it occurred?

"A. No, sir.

"Q. Do you know whether he was in Wichita—does he go to Wichita from time to time?

"A. We were living there at that time.

"Q. You lived in Wichita during 1965?

"A. We lived there from 56 to November 1, 1966." (Emphasis added.)

The record before the trial court discloses no evidence whatever that the appellant had previously been arrested or convicted of drunkenness on any occasion, or that he had ever been arrested or convicted of drunken driving on any occasion in the past. Furthermore, there is no indication in the record that the prosecuting attorney, prior to cross-examining the character witness on rumors of misconduct of the accused, or upon arrests, charges or convictions, gave his professional statement to the judge in the absence of the jury that he had reasonable ground to believe, and did believe, that crimes or misconduct, which were imputed by the rumors, or which were the subject of the arrests or charges, were actually committed by the accused, and that the judgments of conviction inquired about were actually pronounced. The record does not disclose that any evidence of this nature was submitted by the state at any time during the trial of the case to substantiate the inferences left by the questions posed upon cross-examination of the character witnesses. (See K. S. A. 60-447.)

At all times counsel for the appellant objected to the nature of such inquiries and interposed a motion for mistrial at various times throughout the proceeding, and he raised the point in his motion for a new trial. The rulings by the trial court were all adverse to the appellant.

Nowhere in the record, assuming the inquiry was proper, did the trial court instruct the jury when these questions on cross-examination were propounded to the character witnesses as to the limited nature for which the jury was entitled to consider this information— that it was admissible only for the limited purpose of attacking the credibility of the character witness. Furthermore, such instruction was not among the general instructions given when the case was submitted to the jury.

The objections interposed by counsel for the appellant to arrests and/or convictions assumed by the prosecuting attorney in cross-examining the character witnesses were premised on the ground that the questions assumed facts which were not in evidence, and which could not be placed in evidence because they were not true.

After counsel for the appellant argued one of his motions for a mistrial the trial judge remarked, and the following appears in the record:

"THE COURT: Now the Court has already ruled on this. This motion has already been ruled on. If the Court thought for one minute that there had been an attempt to improperly influence this jury, the Court would have taken appropriate action at that time.

"MR. CROSSAN: At this time we object to the Court commenting on the evidence or lack of evidence, and ask for a mistrial for that reason.

"THE COURT: The motion will be overruled. . . ."

Presumably the foregoing occurred in the presence of the jury. The record does not disclose otherwise, and appellant's counsel asserts that it did occur in the presence of the jury.

The propriety of the inquiry propounded to the character witnesses by the prosecuting attorney was again raised in final arguments made to the jury, and an objection was asserted by counsel for the appellant.

The county attorney, in an effort to show the questions propounded to the character witnesses were not improper, submits in his counter abstract on appeal an F. B. I. report disclosing on its face that the appellant was "Arrested or Received" on August 15, 1942, by the Wichita, Kansas, police department for being drunk. No disposition of this case is indicated. It also discloses that on Janu-

ary 20, 1965, the appellant was "Arrested or Received" on a charge of drunkenness by the Wichita police department, which was disposed of by a fine of $27.90.

At best this F. B. I. report, assuming it to be true, discloses two arrests for drunkenness, of which one resulted in a conviction. No other offense is shown on the report except the present D. W. I. (driving while intoxicated) charge which is the subject of this litigation.

None of this information was before the trial court.

The state contends the possession by the county attorney of an F. B. I. record of the appellant showing two arrests and one conviction for being drunk; and the appellant's own statement to the highway patrol officer that he had previously gotten into trouble by consenting to a blood test, justifies legitimate limited inquiry of character witnesses as to whether they had heard such reports in the community. The state contends reference by the appellant to a blood test on a previous occasion, which had gotten him into difficulty, would certainly lead a reasonable person to believe that he had at some time and place been at least charged with D. W. I. This fact alone, it is submitted, should justify a limited inquiry of persons vouching for his sobriety as to whether or not they had heard whether he had ever been arrested for D. W. I.

To give perspective to the problem at hand, we must resort to certain fundamental principles. In the trial of a criminal case the state in presenting its primary evidence to prove its case cannot resort to evidence of the defendant's bad character. But the defendant may offer evidence of his general good reputation in the community or neighborhood for the specific trait in issue—reputation being synonymous with character for this purpose. (K. S. A. 60-460 [z] and *Michelson v. United States* [1948] 335 U. S. 469, 93 L. Ed. 168, 69 S. Ct. 213; and see K. S. A. 60-447, codifying the Kansas law.) Such evidence is admitted because of its tendency to demonstrate the improbability of the defendant's commission of the offense charged. (Gard, Kansas Code of Civil Procedure Annotated, § 60-447, p. 438.)

Once the defendant has undertaken to establish his good character, he opens the entire subject which the law has kept closed for his benefit, and the state is at liberty to rebut such evidence. (60-447, *supra.*) However, the same limitation applies as to the type of proof received, that is, it must be adapted to the charge

made and must involve the specific trait in issue. (60-460 [*z*], *supra; Michelson v. United States,* supra; and see *State v. McDonald,* 57 Kan. 537, 46 Pac. 966; *State v. Yeater,* 95 Kan. 247, 147 Pac. 1114; *State v. McKee,* 131 Kan. 263, 291 Pac. 950; and *State v. Earley,* 192 *Kan.* 144, 386 P. 2d 221.)

The restriction finds its justification substantively in the necessity of avoiding proof of a multiplicity of irrelevant events of a defendant's life which the prosecutor may think cast disparagement on his general reputation as a good citizen. From the standpoint of trial practice it conforms with the ordinary rule which limits the cross-examination of a witness to the matters discussed on direct examination, and with the rule which confines rebuttal to contradiction of specific subjects introduced on direct or cross-examination of defense witnesses. (K. S. A. 60-243 (*b*); and see Gard, Kansas Code of Civil Procedure Annotated, § 60-460 [*z*], pp. 495, 496.)

Out of the foregoing rule has grown the practice with which we are concerned in the instant case.

When a defendant produces witnesses who testify to his good reputation for the relevant facet of character, here sobriety, they may be cross-examined as to whether they have heard rumors in the community or neighborhood as to acts or conduct or charges prior to the offense presently asserted by the state which tend to negative such reputation. (*State v. McDonald,* supra; *State v. Yeater,* supra; *State v. McKee,* supra; *State v. Earley,* supra; and see K. S. A 60-420.)

Such cross-examination is sanctioned as a test of the witness' credibility, the theory being that if he has heard such disparaging rumors his standards as to what constitutes good repute may not be sound, or he lacks good faith, or if he has not heard the rumors, which did in fact circulate, then he is not actually familiar with the defendant's reputation. In *Michelson v. United States,* supra, the court said:

". . . Thus, while the law gives defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans." (p. 479.)

The purpose for which the cross-examination of the defendant's character witness as to particular acts is permitted is not to establish the truth of such acts, but merely to test the credibility of the character witness.

It has often been held by courts throughout our land that it is improper to permit the proof of particular acts of the defendant, as facts, on the cross-examination of his character witness, as distinguished from cross-examination as to whether the witness *has heard* of reports or rumors of such acts; and that it is improper to ask such witness concerning *his personal knowledge* of such acts. This rule is substantiated by our own decisions. (*State v. McDonald,* supra; *State v. Yeater,* supra; *State v. Killion,* 95 Kan. 371, 378, 148 Pac. 643; and see McCormick on Evidence [1954] Good Character of Accused, § 158, pp. 333, 335.)

The administration of the foregoing rule is in the hands of the trial judge, and he has a heavy responsibility to protect the practice from being abused. (*Michelson v. United States,* supra.) A correlative obligation rests upon the prosecutor to display a very high degree of good faith in embarking upon such cross-examination. This rule is recognized in *State v. Yeater,* supra, at p. 250.

The cases in other jurisdictions have generally held that a very high degree of good faith on the part of the prosecuting attorney is required in such cross-examination of the defendant's character witness. It is said that unlimited cross-examination without regard to the actual facts would enable an unscrupulous prosecutor to "manufacture his foundation and then proceed upon the foundation thus laid." (*State v. Rowell* [1915] 172 Iowa 208, 223, 154 N. W. 488.)

In *State v. Dixon* [Mo. 1916] 190 S. W. 290, the court said:

"While we recognize the great latitude permitted in cross-examination in order to test the memory and truthfulness of witnesses offered to prove good reputation, we yet think that the matters inquired about in such a cross-examination should not be merely chimerical, or drawn from the vivid imagination of opposing counsel, or manufactured at the instant for the purpose of producing an erroneous impression, but they ought to have reference to some actual criminality, or breach of the peace, or ill conduct of the party inquired about which would go to hurt reputation. . . ." (p. 293.)

To permit the prosecuting attorney to inquire on cross-examination of the defendant's character witness whether he has not heard that the defendant was guilty of a certain criminal offense is calculated to carry with it the imputation of guilt, to the defendant's great prejudice, unless the court is careful to make clear to the jury the purpose of the question. There must be perfect good faith on the part of counsel propounding the question, the right of full and free explanation in argument by counsel for both sides, and a

clear and emphatic charge of the court to the jury, confining the evidence thus obtained to the purposes for which such interrogatories and answers are legally permissible. (*Kelly v. State* [1920] 17 Ala. App. 577, 88 So. 180; and *Gross v. United States* [8th Cir. 1968] 394 F. 2d 216, Syl. ¶ 2.)

Such questions should not be asked by the prosecuting attorney in the absence of information warranting a reasonable belief on his part that the fact is as implied by the questions; in other words, the questions should not be asked for the mere purpose of getting before the jury an intimation that the defendant had theretofore been guilty of specific acts of misconduct; and where it is apparent that such is the only object of the questions it is undoubtedly misconduct on the part of the prosecuting attorney. (*People v. Perry* [1904] 144 Cal. 748, 78 Pac. 284; *State v. Bateham* [1919] 94 Or. 524, 186 Pac. 5; and see *State v. Kidwell*, 199 Kan. 752, 434 P. 2d 316.)

In 3A Wigmore, Evidence, § 988 (Chadbourn, rev. 1970) it is said:

"It is to be noted that the inquiry is always directed to the witness' hearing *of the disparaging rumor* as negativing the reputation. There must be no question as to the *fact of the misconduct*, or the rule against particular facts would be violated; and it is this distinction that the Courts are constantly obliged to enforce:" (p. 912.)

Under K. S. A. 60-407 all evidence is admissible if it is relevant to the issue being investigated, but where a party may be prejudiced by the admission of evidence (See K. S. A. 60-445), or the admissibility of evidence is challenged, the trial judge may conduct a preliminary inquiry pursuant to K. S. A. 60-408 and determine the admissibility of the evidence.

The trial judge in determining whether to allow the prosecuting attorney to cross-examine the defendant's character witness, when challenged by the defendant, should conduct a preliminary inquiry out of the presence of the jury, and he should satisfy himself:

(1) That there is no question as to the fact of the subject matter of the rumor, that is, of the previous arrest, conviction or other pertinent misconduct of the defendant;

(2) That a reasonable likelihood exists that the previous arrest, conviction or other pertinent misconduct would have been bruited about the neighborhood or community prior to the alleged commission of the offense on trial;

(3) That neither the event nor conduct, nor the rumor concerning it, occurred at a time too remote from the present offense;

(4) That the earlier event or misconduct and the rumor concerned the

specific trait involved in the offense for which the accused is on trial; and

(5) That the examination will be conducted in the proper form, that is, "Have you heard," etc., not "Do you know."

(State v. Steensen [1955] 35 N. J. Super. 103, 113 A. 2d 203; *Michelson v. United States*, supra; and see 3A Wigmore, Evidence, § 988 [Chadbourn, rev. 1970].)

If the conclusion is reached to allow the interrogation, the jury should be informed of its exact purpose, either at the conclusion of the cross-examination of the character witness, or in the charge made to the jury at the close of the case.

An extended annotation accumulating the cases may be found in 71 A. L. R. 1504-1546 on "Cross-examination of character witness for accused with reference to particular acts or crimes."

Turning now to the facts in the instant case, we find that the defendant produced four character witnesses, all of whom testified to the good reputation of the appellant in the community for the trait in issue, namely sobriety. Some of the questions propounded on cross-examination by the prosecuting attorney were improper in form; they elicited answers from the character witnesses indicating the implication conveyed by the prosecuting attorney's question was true; but the trial court had nothing before it to show the good faith in which the prosecuting attorney propounded the questions. The appellant's testimony concerning a previous blood test was insufficient for the prosecuting attorney to infer that the appellant had twice previously been charged or convicted of drunken driving, or even that he had been charged once with drunken driving. The conclusion drawn by the prosecuting attorney from this statement of the appellant was pure speculation.

In the face of an adverse ruling the prosecuting attorney persisted in pressing the inquiry. (*State v. Poston* [1925] 199 Iowa 1073, 203 N. W. 257.)

Assuming the F. B. I. report submitted to this court on appeal for the first time was in the hands of the prosecuting attorney when this case was tried, and that it was a correct report, the only information it conveyed was that the appellant had previously been arrested and convicted of drunkenness on one occasion in Sedgwick County, Kansas. His reputation for sobriety in Sedgwick County would probably not be known in Montgomery County. The 1942 incident reported was too remote in time to be relevant. (*State v. Willard* [Mo. 1917] 192 S. W. 437; McCormick on Evidence, *supra*,

at p. 337; and see *State v. Owen,* 162 Kan. 255, 176 P. 2d 564; and *State v. O'Neal,* 204 Kan. 226, 461 P. 2d 801.)

The remark of the trial court in ruling upon one of the appellant's motions for a mistrial, in the presence of the jury, tended to fix in the minds of the jurors that the implication concerning the offenses or conduct, which was the subject of the prosecuting attorney's cross-examination, was true.

All of these circumstances, coupled with the fact that the jury was at no time instructed concerning the limited purpose for which the cross-examination was permissible, prejudiced the substantial rights of the appellant in the trial of this case. We cannot say on the basis of such record the appellant had a fair trial.

Other points asserted by the appellant have been considered but are found to have no merit.

The judgment of the lower court is reversed with directions to grant a new trial.