STATE of Missouri,
Plaintiff-Respondent,

v.

Chester L. MYERS, Defendant-Appellant.

No. KCD 30002.

Missouri Court of Appeals,
Western District.

April 2, 1979.

William F. Brown, Brown & Buckley, Sedalia, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

DIXON, Judge.

The defendant, having been determined to be subject to the Second Offender Act, § 556.280 RSMo 1969, was sentenced by the court to a term of five years on a jury verdict of guilty of assault with intent to do great bodily harm.

The defendant's appeal raises two issues. The first issue is the sufficiency of the evidence to sustain the conviction. The second issue is the propriety of the State's cross-examination of the defendant's character witnesses.

Because sufficiency is in issue, the bizarre facts of the offense must be related. The complaining witness and only eyewitness testified that she was walking home from her employment at about 11 p. m. and that as she was walking a white van passed her, first in one direction, then in another. She stated that the van had a sign on the door, "Myers Painting." The van stopped, and the driver asked her if she wanted a ride; she told him no, and then upon his entreaty, entered the vehicle, thinking that he might be a distant relative. The interior of the van was described as containing painting equipment. When she got into the vehicle, she asked the driver if he was a painter, to which he responded yes, and she indicated her appreciation for the ride. After a couple of blocks of travel, the complaining witness stated that the driver picked up a 16 oz. Pepsi bottle and struck her squarely in the face with it. The van was still moving. She testified that the driver made no comment and that she did not say anything.

She stated that she jumped out of the van, while it was still in motion, and began running. She went to a home where a unidentified man gave her some towels and walked halfway to a bar with her, which was the only place that was open, and she was taken to a hospital. Officers investigated the incident the next day, discovered the defendant's van at his place of employment and found chips of broken glass and what appeared to be blood stains in the interior of the van. There were no signs upon the truck, but the defendant testified that the signs were magnetic, that one had blown off, and that the other had been taken off. There was evidence from a forensic chemist that the glass could have come from a Pepsi bottle or a large number of other different kinds of bottles. Further tests revealed that the blood found in the interior of the van could not be typed but was of human origin. The defendant testified, asserting that he worked until about 11:00 and that he had never seen the complaining witness before the preliminary hearing. Contrary to the complaining witness' statement, he asserted the passenger seat was in the van on the evening of the events in question. He further testified that the blood could have come from injuries to himself or other tradesmen for whom he might have given first aid. The defendant also offered two character witnesses whose testimony will be later noted. In considering the sufficiency of this evidence, the rule is well settled that after a jury verdict all the facts in evidence and all reasonable inferences must be viewed in the light most favorable to the verdict and evidence and inferences to the contrary disregarded. *State v. Strong,* 484 S.W.2d 657 (Mo.1972). So considered, this evidence is sufficient, but the proof cannot be said to be overwhelming.

The second issue raised by the defendant is an issue arising from the cross-examination of the two character witnesses proffered by the defendant. Both character witnesses testified on direct examination that the defendant's reputation in the community as a truthful, moral, and law-abiding person was good. One of the witnesses was the employer of the defendant who had known the defendant during a four-year period of his employment. This witness was aware of the defendant's prior conviction at the time the employment commenced. The other witness, apparently a co-worker, had known the defendant about a year. Both of these witnesses were cross-examined by the State. The critical question posed to each was, "Have you heard that Mr. Myers' wife was hospitalized as a result of the beating she suffered at the hands of Mr. Myers?"

Both witnesses denied having heard of such an event.

This cross-examination poses a problem which has been both vexing and of frequent occurrence in the cases. The difficulty in the reported cases, as in the instant case, has not been one of the substantive law

governing such inquiry but has been one of procedural difficulty arising from the application of the rules of substantive law.

Missouri follows other common-law evidence states in allowing questions on reputation to be used for certain limited purposes. Early cases set forth the *rules for* cross-examination of reputation witnesses, including the use of rumors of particular bad acts:

> "There was no error in permitting that sort of examination to test a witness vouching for the good character of the defendant. If the witness admitted that he had heard of such alleged acts of misconduct, such admission would tend to weaken his testimony that defendant's reputation for morality was good. The extent to which such cross-examination may go is largely within the discretion of the trial court." *State v. Cooper,* 271 S.W. 471, 473 (Mo.1925).

See also *State v. Seay,* 282 Mo. 672, 222 S.W. 427 (1920); *State v. Harris,* 324 Mo. 139, 22 S.W.2d 1050 (1929); *State v. Havens,* 177 S.W.2d 625 (Mo.1944).

Although such evidence is allowed to be elicited on cross-examination, there is a requirement that questions asked about particular bad acts be asked "in good faith." No clear definition of "good faith" has emerged, but the cases suggest some perimeters for the term. *State v. Willard,* 192 S.W. 437 (Mo.1917), one of the earliest cases on this point, says that ". . . the crimes inquired about ought not to be apocryphal, existing alone in the fertile fancy of a public prosecutor. Neither ought they be so remote in time and place as to furnish by that fact alone a strong inference of reformation." *supra* at 440. A question may not be in good faith if the court has difficulty in determining the purpose for which the question was asked. *State v. McDonald,* 231 S.W. 927 (Mo.1921) at 930. There is a general requirement of fairness in cross-examination, and if "[they] have no reasonable basis on which to base such a cross-examination, it should not be made." *State v. Hicks,* 64 S.W.2d 287 (Mo.1933) at 288.

Later cases have summarized and restated the rules in this area. *State v. Carroll,* 188 S.W.2d 22 (Mo.1945), summarizes the requirements that the evidence of particular bad acts be linked closely to the time of the offense; that the questions not be argumentative, call for a conclusion, or assume facts; that the questions should not be asked merely to improperly show other crimes or collateral details; and that the questions be carefully considered in relation to the witnesses' direct testimony. *supra* at 23–24. See also *State v. White,* 313 S.W.2d 47 (Mo.App.1958) at 55–56 and 56–59; *State v. Butler,* 309 S.W.2d 155 (Mo.App.1958) at 159.

A common thread in all the authority is that the determination of the propriety of the questions to be propounded to the character witness is a matter of the exercise of judicial discretion. Judicial discretion has been defined as follows:

> "An abuse of discretion is an erroneous finding and judgment which is clearly against and contrary to the facts or the logical deductions from the facts and circumstances before the court; which is untenable and clearly against reason which works an injustice, and not justified by the evidence. *Harriman v. Harriman,* Mo.App., 281 S.W.2d 566." *Biggs v. Biggs,* 397 S.W.2d 337, 343 (Mo.App.1965).

In the application of that discretion, there must be a factual basis for the result reached. A judicial determination exercised without the necessary facts cannot be a discretionary act. Thus, in *State v. Selle,* 367 S.W.2d 522 (Mo.1963), the court pointed out that the record left unanswered factual questions which were vital to a determination of the issue of good faith.

The foregoing summary of the case law discloses that the substantive rules for the utilization of such cross-examination are well settled. Despite this settled law with respect to the principles applying to the use of such cross-examination, the issue continues to arise in many appeals.

The question continues to arise because there is a procedural hiatus with respect to

the proper method to pursue such cross-examination. The instant case is a prime example of the difficulty engendered by a lack of a clear-cut procedure for the cross-examination of character witnesses. The questions posed by the State in the instant case clearly satisfy the substantive rules with respect to the form of the question and as to the proximity of the particular bad acts to the time of the offense. The act of beating a wife to the point of requiring hospitalization is of such a nature that it would likely be known and affect the reputation of the defendant. Therefore, an inquiry of character witnesses about these matters would tend to discredit testimony that the defendant's reputation for lawful behavior was good.

However, the manner in which this cross-examination was conducted puts in critical context the procedural defect which the Missouri cases have not yet addressed. The apparent defect is the lack of a settled method to ensure the exercise of a proper judicial discretion in the scope of the cross-examination.

The procedural problem was recognized and dealt with by federal courts long before the adoption of the Federal Rules of Evidence, and the Rules reflect the results of the discussions in the federal cases. The applicable sections appear below:

Rule 405. Methods of Proving Character

"(a) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. *On cross-examination, inquiry is allowable into relevant specific instances of conduct.*"

Rule 608

"(b) Specific instances of conduct. Specific instances of the conduct *of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609,* may not be *proved by extrinsic evidence.* They may, however, in the discretion of the court, if probative of truthfulness or

untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) *concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.*" (Emphasis supplied).

Implicit in the rules are the principles announced in the guiding federal case, *Michelson v. U. S.,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). That case contained an extended discussion of the hazards and pitfalls in this area of evidence, and evaluated the rules and procedures applied in the various jurisdictions. Finally, however, the Supreme Court approved the procedure used by the trial court. Great care was used by the trial judge in instructing the jury as to the permissible uses of the rumor questions. More significantly, the trial judge ascertained, out of the presence of the jury, "[whether] the target of the question was an actual event . . ." *supra,* 335 U.S. at 481, 69 S.Ct. at 221. In essence, the Supreme Court approved an offer of proof on the "good faith" or factual basis of the prosecutor's question; this offer of proof technique has been suggested by Wigmore III A Evidence § 988 (Chadbourn Rev. 1970). Wigmore's commentary says clearly that "There must be no question as to the *fact* of the misconduct . . . ." *supra.*

More recent cases, particularly in the Fifth Circuit, are in accord with the procedure outlined in *Michelson.* In *U. S. v. Crippen,* 570 F.2d 535 (5th Cir. 1978), the trial court carefully examined Rule 608b and "made certain there was a factual basis for the attempted impeachment," *supra* at 538–39, and properly instructed the jury. Similar procedures have been followed in *U. S. v. Bynum,* 566 F.2d 914, 919 (5th Cir. 1978) and *U. S. v. Wells,* 525 F.2d 974, 977 (5th Cir. 1976). In a case where the procedure was not precisely followed, the court upheld the trial court's procedure but added:

"We endorse, as the better practice, an *in camera* showing prior to cross-examination, that the prosecution has, in good

faith, some factual basis for the rumors to be inquired about. The court is thus in a position to exercise its judicial discretion before the matter is presented to the jury." *U. S. v. West,* 460 F.2d 374, 376 (5th Cir., 1972).

In Kansas, a state with a codified set of evidence rules, the Supreme Court recently thoroughly examined this area and reached much the same conclusions as the federal courts. *State v. Hinton,* 206 Kan. 500, 479 P.2d 910 (1971). The court carefully traced the development of the law in state and federal cases, and cited to the *Michelson* principles and Wigmore. Finally, the court outlined a procedure for the trial judge to follow in cases where impeachment is sought:

"The trial judge in determining whether to allow the prosecuting attorney to cross-examine the defendant's character witness, when challenged by the defendant, should conduct a preliminary inquiry out of the presence of the jury, and he should satisfy himself:

(1) That there is no question as to the fact of the subject matter of the rumor, that is, of the previous arrest, conviction or other pertinent misconduct of the defendant;

(2) That a reasonable likelihood exists that the previous arrest, conviction or other pertinent misconduct would have been bruited about the neighborhood or community prior to the alleged commission of the offense on trial;

(3) That neither the event nor conduct, nor the rumor concerning it, occurred at a time too remote from the present offense;

(4) That the earlier event or misconduct and the rumor concerned the specific trait involved in the offense for which the accused is on trial; and

(5) That the examination will be conducted in the proper form, that is, 'Have you heard,' etc., not 'Do you know.' [Citation omitted].

If the conclusion is reached to allow the interrogation, the jury should be informed of its exact purpose, either at the

conclusion of the cross-examination of the character witness, or in the charge made to the jury at the close of the case." *supra* at 917.

The instant case demonstrates the need for the adoption of such procedure in Missouri to implement the settled rules concerning the cross-examination of character witnesses. At the time the questions were posed to the witnesses, an objection was made by defense counsel, asserting in general terms the inflammatory and prejudicial nature of the questions. This objection was coupled with a motion for a mistrial; both the objection and motion were summarily overruled by the trial court. After the evidence had closed, the State, apparently recognizing the issue of good faith might be involved in the questions put to the character witnesses and having asserted to the court in the colloquy that the questions were asked in good faith, asked leave to reopen the evidence, which the court granted. The State then offered in evidence the divorce petition and related papers filed by Mr. Myers' wife. Those papers contained allegations that the defendant had beaten his wife and caused her great bodily injury, but contained no direct evidence of injury sufficient enough to require hospitalization. It should be noted that the prosecutor possessed some knowledge concerning the events since he had represented the wife in a divorce action, and a complaint had been filed with the prosecuting attorney concerning the alleged beating. These facts were demonstrated by the State's abortive attempt to introduce the fact of the wife's complaint into evidence on the cross-examination of the defendant.

At the motion for new trial, the defendant, in challenging the cross-examination, asserted there was no evidence of the fact of an assault *causing* the wife's hospitalization. The critical part of the offending question was not the assault on the wife—there was a basis for that inquiry; but there was no basis for the inquiry about the hospitalization of the wife. The inference that arises from the very form of the question, that the defendant had beaten his

wife so severely as to cause her hospitalization, is a particularly damaging inference upon the facts of this case. The apparently motiveless attack upon the complaining witness is almost inexplicable, absent a predisposition on the part of the defendant to make such assaults, and proof of a similar assault upon his wife sufficient to cause her hospitalization would tend to convince the jury that he was, in fact, guilty of the instant brutal assault. In short, if there was not a factual basis for this question, it should never have been before this jury, and the prosecutor should not have asked the question implying hospitalization without making a prior showing of a good faith basis for its being put to the witness.

The damage may be done by the time the question is put to the witness in the presence of the jury:

> " 'It is practically impossible for a man sitting in judgment to exclude from the final make-up of his mind facts which have lodged there, even if the court gravely tells him that such facts should not have been disclosed, and tells him, further, not to consider them. *The court does not tell him that such statements are not true. The objections by counsel for defendant probably convince him that they are true.'* " *State v. Lovan,* 245 Mo. 516, 538, 151 S.W. 141, 147 (1912).

The above quotation was relied upon by the court in *Selle* in reversing a conviction upon strikingly similar facts. *supra* at 531. *Selle* was an assault case; the complaining witness identified the defendant, and there was a minimum of corroborative evidence. In *Selle,* as here, improper questions were asked of character witnesses, to which objections were not properly made or which were sustained but the court held that this did not avoid prejudice in the minds of the jury. The *Selle* court pointed out that a single incident can be sufficient to justify reversal, and it did reverse on the ground of the unanswered question to which an objection was sustained. The *Selle* court held that the motion for a mistrial should have been sustained because of the prejudice engendered by the question itself.

In this case, it cannot be said that the question, asserting as a fact that hospitalization of the defendant's wife for a beating, did not tip the scales with a jury that deliberated for four hours to decide a case tried in one day.

The conviction is set aside, and the cause remanded for a new trial.

All concur.