389 So.2d 372 (1980)
STATE of Louisiana
v.
Nicholas L. JOHNSON.
No. 67166.
Supreme Court of Louisiana.
October 6, 1980.
*374 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Harold D. Marchand, Asst. Dist. Atty., for plaintiff-appellee.
Mack I. Frank, Baton Rouge, for defendant-appellant.
DENNIS, Justice.
Defendant, Nicholas L. Johnson, was charged by bill of information with the crime of armed robbery, a violation of La. R.S. 14:64. After trial by jury, he was found guilty and sentenced to serve eight years at hard labor. On appeal, defendant relies on two assignments of error, both involving impermissible cross-examination of the defendant and his character witness about defendant's prior criminal record. Although we find that the prosecution's questioning was objectionable, we must affirm defendant's conviction and sentence because he did not properly present the errors for our review. The abuses revealed in the record, however, move us to adopt safeguards for future cases.
The state's case against the defendant consisted entirely of testimony given by one eyewitness, Edna Burke, an employee of a grocery store that was robbed on the morning of February 12, 1979. Ms. Burke testified that a man she identified as the defendant entered the store around nine o'clock a. m. while she was alone at the cashier's counter, brandished a revolver partially protruding out of a paper sack, and indicated by motioning with the weapon that he wanted the money in the register. She emptied the register and the robber then fled the store on foot. According to Ms. Burke, the entire incident took less than two minutes, during which time she had the opportunity to get a good look at the man, whom she described as between 5'7" and 5'9" in height, with black hair, a heavy beard, and a smooth dark complexion.
Ms. Burke testified that about a month after the incident, the defendant entered the store to buy beer and cigarettes. At this time she immediately identified him as the man who had robbed the store and tried unsuccessfully to alert the store manager, John Lewis, to his presence. On several occasions thereafter the defendant, who admitted living in the neighborhood, would come and go from the store and the manager would be unsuccessful in stopping his employee's suspect before defendant's departure. Finally, on April 23, 1979, on a pre-arranged signal from Ms. Burke, Lewis caught sight of the defendant as he left the store and followed him to a carwash. Lewis then summoned police, who took the defendant into custody. Ms. Burke was brought to the scene and she identified the defendant as the same man who had robbed the store on February 12. Defendant was then arrested for armed robbery.
At trial, defendant placed himself at work pouring concrete forms during the day of February 12, 1979. Two defense witnesses corroborated this story. Robert Williams, who along with the other witness, Anthony Roberts, operated an independent contracting business, testified that the defendant was employed by him at the time of the offense. On cross-examination, he conceded that it was possible for the defendant to have missed work on that particular day. Anthony Roberts testified that defendant was employed by his business on the day of the offense and would have been at work that day because he "never skipped a day" of work.
Defendant then called Roy Lee Jarrell, who had lived next door to the defendant for a year, and worked with him for two years in Baton Rouge, to testify as a character witness. Mr. Jarrell testified that he never had heard the defendant being accused *375 of stealing, and otherwise knew him to be an honest person.
On cross-examination of Mr. Jarrell, the prosecution asked the witness three separate questions concerning the defendant's prior criminal record: "Would it change your opinion of Mr. Johnson if I told you that in November of 1968, he was arrested for selling a narcotic drug?" "Mr. Jarrell, would it change your opinion about Mr. Johnson if I told you that in March of 1974 that he was arrested for possession of weapons and danger [sic] instruments?" "Would it change your opinion about Mr. Johnson if I told you that in July '74 he pled guilty to criminal possession of a controlled dangerous substance?" Following the second question, defense counsel objected to any reference to arrests on cross-examination of the witness. After the third question, defense counsel objected on grounds that the question should include the specific possessory offense charged. All three defense objections were overruled.
Defendant Johnson followed Jarrell to the stand. On direct examination, defendant was asked whether the prior conviction was of a violent nature, or involved the traits of honesty or veracity, and whether he had ever been convicted of carrying a gun or any type of offense related to the possession of a gun. Defendant replied to all of these questions in the negative. On cross-examination, the prosecution elicited from the defendant that the conviction involved possession of marijuana, for which defendant had served time in jail. The prosecution then proceeded to go into an extended inquiry into the defendant's prior arrests, including the details of the arrest for possession of a dangerous weapon. Defendant explained that this involved a blunt club found in the car he was driving at the time of the arrest for the narcotics violation. The club was not his but rather belonged to the owner of the car, and the charge was subsequently dropped. Defense counsel offered no objection to these questions.
On appeal, defendant assigns as error the trial court's ruling on his objections to the interrogation of the character witness, Mr. Jarrell. He also assigns error to the denial of his motion for a new trial, which was based partially on the prosecution's interrogation of Jarrell and also on the prosecution's interrogation of the defendant regarding his previous arrests.[1] In his brief, defendant argues that the questions put to the witness Jarrell were in improper form, and involved charges which were too remote and irrelevant to the offense charged. Defendant further maintains that the cross-examination of both Mr. Jarrell and the defendant about the defendant's prior criminal record was an improper and highly prejudicial use of other crimes evidence which could have warranted a mistrial.
We agree that the potential for abuse of such evidence indicates that some regulation of character witness cross-examination is needed and adopt safeguards to be applied in future cases. However, these safeguards may not be applied in the present case to reverse defendant's conviction because he did not preserve the error for our review by a properly grounded contemporaneous objection at trial.
In interpreting our statutory rules concerning character evidence, see La.R.S. 15:479-481, this Court has held that "it is not reversible error for the prosecution to question a defense witness about his knowledge of prior arrests of the defendant." State v. Harvey, 329 So.2d 731 (La.1976); State v. Banks, 307 So.2d 594 (La.1975).
This type of rule has been criticized for a number of reasons both within and without our state. It trenches close to the widely condemned practice of proving other crimes extrinsically in order to show bad reputation as a logical result, presenting the danger that the jury, finding the prior crime, will shortcut the reputation process and use it more directly to convict in the case on trial. McCormick on Evidence, § 191, p. 457 *376 (Cleary ed. 1972). See, Michelson v. United States, 335 U.S. 469, 477-87, 69 S.Ct. 213, 219-224, 93 L.Ed. 168, 174-179 (1948); 3 A. Wigmore, Evidence, § 988, pp. 920-21 (Chadbourn rev.1970). In order to alleviate some of the danger, the witness should not be asked "if he knows" that the accused has committed such other crimes, but only whether he "has heard" that defendant has committed particular acts inconsistent with the reputation vouched for on direct. McCormick, supra, at pp. 456-57. See also, G. Pugh and J. McClelland, The Work of the Louisiana Appellate Courts for the 1972-1973 Term-Evidence, 34 La.L.Rev. 443, 447 (1974). Even so, a rule permitting the cross-examiner to ask the character witness whether he "has heard" of other particular crimes of accused involving the same trait is pregnant with possibilities of destructive prejudice. McCormick, supra, at p. 457. Although the courts agree that propounding such a question in bad faith may be ground for reversal, establishing bad faith may be a hopeless task for an accused in the absence of judicial intervention. McCormick, supra, at p. 458; 3 A. Wigmore, supra, § 988.
Wigmore and McCormick recommend that the trial judge, before permitting the prosecuting attorney to cross-examine the character witness on rumors of misconduct of the accused, should question the prosecutor in the absence of the jury, as to whether he has credible grounds for asking the question. McCormick, supra, § 191; 3 A. Wigmore, supra, § 988. Several jurisdictions have approved, recommended, or required this or a similar practice. Michelson v. United States, supra; State v. Hinton, 206 Kan. 500, 479 P.2d 910 (1971); Miller v. State, 418 P.2d 220 (Okl.Cr.1966); People v. Yoshio Futamata, 140 Colo. 233, 343 P.2d 1058 (1959); People v. Dorrikas, 354 Mich. 303, 92 N.W.2d 305 (1958); State v. Steensen, 35 N.J.Super. 103, 113 A.2d 203 (1955).
The Superior Court of New Jersey has formulated perhaps the most thoughtful guidelines to assist trial judges in determining whether the prosecutor has reasonable grounds for cross-examining the character witness about convictions, arrests or other misconduct of the accused. In determining whether to allow the cross-examination, the trial court should conduct a preliminary inquiry out of the presence of the jury and he should satisfy himself:
"(1) that there is no question as to the fact of the subject matter of the rumor, that is, of the previous arrest, conviction, or other pertinent misconduct of the defendant;
"(2) that a reasonable likelihood exists that the previous arrest, conviction or other pertinent misconduct would have been bruited about the neighborhood or community prior to the alleged commission of the offense on trial;
"(3) that neither the event or conduct nor the rumor concerning it occurred at a time too remote from the present offense;
"(4) that the earlier event or misconduct and the rumor concerned the specific trait involved in the offense for which the accused is on trial; and
"(5) that the examination will be conducted in the proper form, that is: `Have you heard,' etc., not `Do you know,' etc. [citations omitted]
"And if the conclusion is reached to allow the interrogation, the jury should be informed of its exact purpose either at the conclusion thereof or in the charge." State v. Steensen, 35 N.J.Super. 103, 113 A.2d 203, 206 (1955); accord, State v. Hinton, 206 Kan. 500, 479 P.2d 910 (1975); Miller v. State, 418 P.2d 220 (Okl.Cr. 1966); cf. People v. Robinson, 70 Mich. App. 606, 247 N.W.2d 308 (1976); State v. Briscoe, 78 Wash.2d 338, 474 P.2d 267 (1970).
In reviewing the questions propounded by the state in the instant case, we are convinced that the asserted dangers of our present practice are real and that some regulation of character witness examination is necessary. The legitimate function of the prosecution in subjecting the character witness's testimony to the crucible of cross-examination to enable the jury to assess his *377 familiarity with defendant's reputation and the quality of his report thereof can be performed without the suggestion or assertion of facts in such a way as to arouse undue prejudice within the jury. In order to promote this legitimate function of the prosecution and to insure that a defendant is protected from possible abusive cross-examination, we conclude that the safeguards which have been advocated by the scholars, Wigmore and McCormick, approved by the United States Supreme Court in Michelson v. United States and articulated by the New Jersey Superior Court should be adopted as fully set forth earlier in this opinion.
Defendant may not avail himself of these safeguards, however, because he failed to make a contemporaneous objection on these grounds at trial. A defendant is limited on appeal to the grounds for the objections articulated at trial. Generally speaking, a new basis for an objection, albeit meritorious, cannot be raised for the first time on appeal. La.C.Cr.P. art. 841; State v. Ferguson, 358 So.2d 1214 (La.1978); State v. Holstead, 354 So.2d 493 (La.1977); State v. Marks, 337 So.2d 1177 (La.1976).
Defendant's contemporaneous objection following the second question to any reference to arrests on cross-examination of the character witness was properly overruled. There is no such blanket prohibition against all questions about arrests. The character witness may be asked whether he "has heard" of previous arrests under the safeguards set forth above. That the question elicited the witness's opinion instead of his knowledge or reputation was clearly erroneous, La.R.S. 15:479, but defendant failed to object on this basis. Nor could defendant claim reversible error in the prosecution's failure to specify in the third question the particular controlled dangerous substance involved in defendant's prior conviction. Inquiry into reputation of prior convictions is also permissible on cross-examination, under the safeguards adopted herein, and the nature of the offense was sufficiently delineated to elicit an intelligent response from the witness. Again, an objection to inquiry into the witness's opinion rather than the defendant's reputation would have been apt, but it was not made.
We are also prevented from ruling on the propriety of the prosecution's cross-examination of the defendant about his prior arrests, for no contemporaneous objection was made for the trial judge's consideration. La.C.Cr.P. articles 841, 851; State v. Collins, 359 So.2d 174 (La.1978); State v. Bernard, 358 So.2d 1268 (La.1978).
Because we find no reversible error in those matters properly before us on appeal, we affirm defendant's conviction and sentence. However, in future cases prejudicial error resulting from a trial court's failure to enforce the safeguards adopted herein during the cross-examination of character witnesses will require reversal, if properly objected to an assigned.
AFFIRMED.
WATSON, BLANCHE and MARCUS, JJ., concur in result.
NOTES
[1] Other grounds appearing in the motion for a new trial were neither briefed nor argued, and therefore are considered as abandoned.