808 So.2d 472 (2001)
STATE of Louisiana
v.
Leward ASBERRY
No. 1999 KA 3056.
Court of Appeal of Louisiana, First Circuit.
February 16, 2001.
Writ Denied March 8, 2002.
*474 Emma Devillier, Assistant District Attorney, Plaquemine, for Appellee, State of Louisiana.
M. Michele Fournet, Baton Rouge, for Defendant/Appellant, Leward Asberry.
Before: CARTER, C.J., FOIL, and WEIMER, JJ.
CARTER, C.J.
The defendant, Leward Asberry, was charged by grand jury indictment with one count of second degree murder, a violation of LSA-R.S. 14:30.1 A(1), and pled not guilty. Following a jury trial, he was found guilty of manslaughter, a violation of LSA-R.S. 14:31, by unanimous verdict. He moved for new trial, but the motion was denied. He was sentenced to twenty-five years at hard labor. He now appeals, designating two assignments of error.

FACTS
On January 2, 1997, Brandon Markel Riley, Frank Edward Davis, Sandy A. Hooks, and the victim, Jamie Pierre (hereinafter referred to as "friends"), were riding together in a car on Meriam Street in Plaquemine, Louisiana. The car stopped after being approached by a woman who mistook Davis for someone else. As the friends began to leave, a bottle was thrown at their car. The car was backed up to see who had thrown the bottle. Riley and Davis then exited the car and Davis threw a glass at the door of the house into which the person who had thrown the bottle retreated. As Riley and Davis were returning to the car, the defendant opened fire upon the friends, firing approximately four or five times before his gun jammed. Hooks was hit by a bullet in her left breast, but survived. The victim was hit by a bullet in her left eye and died.

LIMITATION OF CROSS-EXAMINATION
In assignment of error number 1, the defendant contends the trial court committed reversible error and violated his constitutional right to confrontation by precluding cross-examination of Detective Johnson regarding the defendant's successful civil lawsuit for false arrest against the Plaquemine City Police Department.
During cross-examination of Plaquemine City Police Detective Robert Johnson, outside of the hearing of the jury, defense counsel moved to question Detective Johnson concerning whether or not he had been influenced by the fact that the defendant had filed a lawsuit against him and had received a settlement as a result of Detective Johnson's police investigative actions in a previous case. The defense argued such an inquiry was warranted given the manner in which Detective Johnson had composed the photographic line-up, Detective Johnson's failure to record pertinent statements in his police report, and the fact that the victim was Detective Johnson's first cousin.
The trial court ruled the defense had failed to lay a proper foundation for the proposed inquiry. The court found no showing of deviation from standard procedure and found that Detective Johnson had done "everything proper[ly]." It noted the defendant's photograph had not been prominently placed in the photographic line-up and Detective Johnson had withdrawn from the case at a logical point. In regard to statements omitted from the police report, the court held that defects in the police work were for the jury to decide *475 and the defense could argue its position to the jury. The court denied the defense motion, and the defense objected to the court's ruling.
Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness. LSA-C.E. art. 607 D(1). In particular, counsel may inquire into the existence of a civil suit involving the witness or the possibility of civil liability on the part of the witness when such facts indicate that the witness has an interest in the criminal case or is otherwise not totally impartial. The broad right to impeach the witness for bias or interest is dictated by LSA-C.E. art. 607 D(1), by the statutory right to full cross-examination (LSA-C.E. art. 611 B), and by the constitutional right of confrontation. La. Const. art. I, § 16; U.S. Const. Amend. VI. See State v. Quatrevingt, 93-1644, pp. 23-24 (La.2/28/96), 670 So.2d 197, 210, cert. denied, 519 U.S. 927, 117 S.Ct. 294, 136 L.Ed.2d 213 (1996).
Relevant evidence, however, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. LSA-C.E. art. 403; Quatrevingt, 93-1644 at p. 24, 670 So.2d at 210.
The trial court did not abuse its discretion in denying the defense motion. The court found, and the record supports the determination, that the proposed cross-examination had a low probative value. Further, considerations of undue delay and waste of time support the trial court's refusal to allow the proposed cross-examination. The record indicates that prior to seeking permission for the proposed cross-examination, the defense elicited testimony from Detective Johnson that he was familiar with the defendant from a previous arrest, that the previous arrest did not lead to a conviction, and that the charge that the defendant was previously arrested on was dropped. Defense counsel also insinuated that the previous arrest was an unpleasant memory for Detective Johnson and thoroughly questioned him concerning whether or not he had an axe to grind with the defendant, whether or not he was upset with the defendant, and whether or not he was upset with the defendant's family.
Later in the trial, during cross-examination of former Plaquemine Police Department Chief of Detectives Captain Tommy Favron, defense counsel also elicited testimony that the Plaquemine Police Department had previously arrested the defendant on the basis of an eyewitness' statement, but had then been forced to drop the charges because it had the wrong man. Defense counsel stated the Plaquemine Police Department and Captain Favron must have been embarrassed to admit their mistaken arrest and wrongful detention of the defendant. Counsel then questioned Captain Favron concerning whether or not he had an axe to grind with the defendant, and whether or not he wanted retribution against the defendant.
On direct examination, the defendant also testified that Captain Favron and Detective Johnson arrested him for robbing a store, but had to dismiss the charges after the people in the store said he was not the perpetrator. The defendant claimed that following his release, his observation of Detective Johnson's body language and his eye contact with Detective Johnson convinced him that Detective Johnson "ain't too much care for me." The defendant also claimed that upon his arrest for the instant offense, either Captain Favron or Detective Johnson stated to him, "I got you now."
*476 Angerice Demetrice Asberry, the defendant's sister, also testified that in October of 1998 (trial began on April 13, 1999), Detective Johnson told her, "`I don't care for your brother, and I guess your brother don't care for me.'"
Confrontation errors are subject to a harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438. Factors to be considered by the reviewing court include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438; State v. Wille, 559 So.2d 1321, 1332 (La.1990). The verdict may stand if the reviewing court determines that the guilty verdict rendered in the particular trial is surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). State v. Broadway, 96-2659, p. 24 (La.10/19/99), 753 So.2d 801, 817, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000).
Detective Johnson's testimony was not critical to the State's case in the instant matter. The State's key witnesses were the persons present at the scene of the offense. Further, the proposed cross-examination would have been cumulative to the cross-examination permitted the defense concerning possible police animosity toward the defendant due to his previous arrest and subsequent release. Additionally, the State had a very strong case against the defendant. Multiple witnesses saw the defendant committing the offense. Thus, even assuming any error occurred in the trial court's limitation of the proposed cross-examination, the guilty verdict rendered in the particular trial was surely unattributable to the error, and the error would not be reversible. Accordingly, this assignment of error is without merit.

JOHNSON HEARING
In assignment of error number 2, the defendant contends the trial court committed reversible error in allowing the State to cross-examine a defense character witness regarding prior arrests without conducting a hearing pursuant to State v. Johnson, 389 So.2d 372 (La.1980).
In Johnson, 389 So.2d at 375 & 377, the Louisiana Supreme Court recognized the potential for abuse of character witness cross-examination posed by its interpretation of LSA-R.S. 15:479-81[1] (not reversible error for the prosecution to question a defense witness about his knowledge of prior arrests of the defendant) and adopted certain safeguards for future cases. The court ruled that on cross-examination, a character witness should not be asked "if he knows" that the accused has committed other crimes, but rather, whether he "has heard" that the defendant has committed particular acts inconsistent with the reputation vouched for on direct. Johnson, 389 So.2d at 376-77. Further, the court ruled that the trial judge, before permitting the prosecuting attorney to cross-examine the character witness on rumors of *477 misconduct of the accused, should question the prosecutor in the absence of the jury, as to whether he has credible grounds for asking the question. Johnson, 389 So.2d at 376-77. The Johnson Court adopted the following guidelines to assist trial judges in determining whether the prosecutor has reasonable grounds for cross-examining the character witness about convictions, arrests or other misconduct of the accused:
(1) that there is no question as to the fact of the subject matter of the rumor, that is, of the previous arrest, conviction, or other pertinent misconduct of the defendant;
(2) that a reasonable likelihood exists that the previous arrest, conviction or other pertinent misconduct would have been bruited about the neighborhood or community prior to the alleged commission of the offense on trial;
(3) that neither the event or conduct nor the rumor concerning it occurred at a time too remote from the present offense;
(4) that the earlier event or misconduct and the rumor concerned the specific trait involved in the offense for which the accused is on trial; and
(5) that the examination will be conducted in the proper form, that is: `Have you heard,' etc., not `Do you know,' etc.
And if the conclusion is reached to allow the interrogation, the jury should be informed of its exact purpose either at the conclusion thereof or in the charge.
Johnson, 389 So.2d at 376.
Citing the defendant's failure to make a contemporaneous objection on the particular grounds the court found troublesome, the court in Johnson did not allow the defendant before it to avail himself of the safeguards it adopted in that decision. Johnson, 389 So.2d at 377. Subsequent to Johnson, the Louisiana Supreme Court indicated that in order to preserve the issue of a trial court's failure to conduct a Johnson hearing for review, a defendant must tender a contemporaneous objection to the court's failure to conduct such a hearing. See State v. Smith, 430 So.2d 31, 44, n. 8 (La.1983); State v. Smith, 432 So.2d 206, 207 (La.1983) (opinion of Calogero, Justice, dissenting). The Louisiana Supreme Court also later ruled that even though Johnson delineated numerous safeguards regulating prosecution cross-examination of character witnesses, the ultimate question was whether or not the prosecution's cross-examination unduly prejudiced the defendant before the jury. See State v. Sepulvado, 93-2692, p. 12 (La.4/8/96), 672 So.2d 158, 167, cert. denied, 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996).
In the instant case, the defendant neither tendered a contemporaneous objection to the trial court's failure to conduct a Johnson hearing, nor was he unduly prejudiced by the State's cross-examination of his character witness.
At trial, the defense presented testimony from Reverend Clyde McNell, Pastor of New Life Baptist Church of Grosse Tete, Pilgram Rest, and St. Mark of Plaquemine. In response to defense questioning, Reverend McNell testified: he had known the defendant since the defendant's birth, the defendant was an active member of Reverend McNell's congregation, he saw the defendant two to three times a month, he knew of the defendant's reputation in the community, he had no knowledge of the defendant having a reputation in the community for violence, the defendant was not known as a violent person, he had no knowledge of the defendant being known to carry a gun, and the defendant was not known as a person who fired upon other individuals in the community.
*478 On cross-examination, the State asked Reverend McNell whether he had heard that in 1995, the defendant was arrested for interfering with an officer, and the Reverend answered he was not familiar with the details of that case. The State asked Reverend McNell whether he had heard that the defendant was also arrested for disturbing the peace, and the Reverend answered he really did not know about the charges. The State asked Reverend McNell whether he had heard that in 1995, the defendant was arrested for three counts of resisting arrest on one occasion, and the Reverend answered he was unaware of that fact. The State told Reverend McNell that in a different scenario, the defendant had been arrested on two counts of resisting arrest on one occasion, and the Reverend indicated he was unaware of that fact. The State asked Reverend McNell whether he knew that in 1995, the defendant had been arrested for public intimidation, and the Reverend answered he was unaware of that fact. The State asked Reverend McNell whether he knew that in 1995, the defendant was also arrested for aggravated battery, and the Reverend answered he was unaware of that fact. The State asked Reverend McNell whether he knew that in 1998, the defendant was arrested for simple criminal damage to property, and the Reverend answered he was unaware of that fact. Lastly, the State asked Reverend McNell whether he had heard that the defendant was arrested for illegal carrying of weapons, and the Reverend answered no, he had not.
Any prejudice suffered by the defense from the State's cross-examination of Reverend McNell certainly was not undue. The cross-examination at issue was in direct response and in rebuttal to the testimony elicited from Reverend McNell by the defense concerning the defendant's good character. A witness may be cross-examined on any matter relevant to any issue in the case. LSA-C.E. art. 611 B. Character witnesses may be cross-examined concerning relevant specific instances of conduct. See LSA-C.E. art. 405 A. The State has the right to rebut testimony elicited from a witness by the defense. See State v. Koon, 96-1208, p. 25 (La.5/20/97), 704 So.2d 756, 771-72, cert. denied, 522 U.S. 1001, 118 S.Ct. 570, 139 L.Ed.2d 410 (1997). Accordingly, this assignment of error is without merit.

CONCLUSION
For the above reasons, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Repealed by 1988 La. Acts No. 515, § 8.