532 So.2d 1160 (1988)
STATE of Louisiana
v.
Don THOMPSON.
No. 88-K-0265.
Supreme Court of Louisiana.
October 31, 1988.
Rehearing Denied December 1, 1988.
*1161 William J. Guste, Jr., Atty. Gen., Harry F. Connick, Dist. Atty., A. Hammond Scott, Sandra Pettle, Asst. Dist. Attys., for applicant.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for respondent.
MARCUS, Justice.
Don Thompson was charged by bill of information with the fatal shooting of his girlfriend, Lisa Chaney, in violation of La. R.S. 14:31 (manslaughter). Prior to trial, the state gave defendant written notice of its intent to introduce evidence of similar acts to prove "knowledge, system and intent." After a hearing, the trial judge ruled the evidence admissible. After trial by jury, defendant was found guilty as charged and sentenced to serve eighteen years at hard labor. The court of appeal reversed the conviction and sentence and remanded for a new trial, finding that the admission of testimony at trial of a prior offense was reversible error.[1] Upon the state's application, we granted certiorari to review the correctness of that decision.[2]
At about 5:00 a.m. on June 8, 1986, Officers Batiste and Williams responded to a call of a shooting at 3665 Law Street in New Orleans, Louisiana. Upon arrival, they found nineteen year old Lisa Chaney lying on the bed barely alive having been shot in the face. An ambulance was called but the victim was pronounced dead at the scene. The officers testified that defendant came into the room with blood stains on his arms and clothing and related the following events. He was leaving the house to get a sandwich at a sandwich truck when he heard a gun shot. He ran back into the room where he found Lisa lying on the bed. There was a gun on the floor near the bed. He picked it up and placed it on the bed beside her. The body was lying across the bed and he moved it to place her head on a pillow against the headboard. He ran into the hallway yelling that Lisa had shot herself in the face. When questioned about the ownership of the gun, he denied any knowledge of it.
Detective Saladino of the New Orleans Homicide Division was called to the scene. He found a cocked gun lying on the bed next to the victim. The index finger of her right hand was in a bent position. An on-the-scene dusting of the gun disclosed no fingerprints. After the victim's body was removed, a bullet casing was found on the pillow. Defendant gave the detective two different accounts of the events leading up to Lisa's death. The first account was that they had stopped at a nearby establishment to get dinner and Lisa told him she would go ahead and meet him at the apartment. As he was going up the stairs to enter the apartment, he heard a shot and ran to Lisa's bedroom where he discovered she had been shot. Defendant stated that it was either an accident or she shot herself. After checking the scene, Saladino asked defendant once again to tell him what happened. This time, defendant stated that he had gotten the food, returned to the apartment and entered the bedroom. Just as he entered, she had the gun and it went off. She fell on the bed and he picked her up and moved her, which explained the reason for blood on his clothing. Although defendant told Saladino that he moved the victim's body from a horizontal to a vertical position, the detective noticed there were no blood stains on the white linen where the body had allegedly fallen. The detective also noticed two types of blood stains on defendant's clothing, contact blood and blood drops or splatters. *1162 The shoes of the victim had blood in the heel sections and were beneath the bed upon arrival at the scene. When questioned about the gun, defendant told Saladino it belonged to Lisa and that she had purchased it from someone on the street. At that time, Saladino advised defendant of his rights and placed him under arrest. Photographs taken at the scene of the shooting generally corroborated the observations made by the investigating officers.
Lisa's mother, Ernestine Walker, and sister, Rose Chaney, testified that they were asleep in their respective bedrooms in the apartment when the incident occurred. Mrs. Walker was awakened when defendant knocked on her door saying to come see what Lisa had done. Ms. Chaney recalled hearing a shot in her sleep and was awakened when she heard defendant knock on her mother's door yelling that Lisa had shot herself. Both testified they had never seen Lisa with a gun and that she was afraid of guns.
Dr. Monroe Samuels, an expert in forensic pathology, conducted an autopsy on the victim. He stated that the cause of death was a bullet that entered the victim's face on the right cheek and went backward and slightly upward entering the skull and causing a laceration of the brain stem. Dr. Monroe found no smoke staining or powder stippling or tattooing around the wound which results from the impact of gun powder against the skin when a gun is fired at close range, that is, either pressed against the skin or within a few inches of the surface. He testified that, depending upon the individual weapon, it was not likely that a wound caused by a bullet fired from over five feet would cause stippling or smoke staining on the skin since the powder would fall to the ground.
Defendant called his brother, Arnold Thompson, as a witness who testified that he had been out with Lisa and defendant from about 7:00 that evening until 4:00 in the morning. Their truck had broken down, and he and defendant pushed the truck to a service station while Lisa steered. He stated that Lisa had a small gun on her person while in the truck and she left it in the truck when they caught a cab to go home.
Defendant testified on his own behalf. He offered yet another version of the shooting incident. After relating the events of the evening, he stated that about 4:30 a.m., he and Lisa stopped at a restaurant to order something to eat. The lady told him it would be about fifteen minutes to prepare the chicken so he walked Lisa home. When he got back to the house, he went to the bathroom and when he came into Lisa's room, she was taking a pistol out of her purse. He explained that it was his pistol and that a "dude" had given it to him to hold because the "dude" owed him some money. He had taken the gun with him that evening to collect the money and return the gun, and Lisa had put it in her pocketbook. He was on his way out the door to get the chicken when the gun went off. He took the gun out of her hand and dropped it and started to help Lisa. When questioned about his relationship with Lisa, he testified that they had gone together for three years and had a child together. They separated when he was arrested and incarcerated for thirty-five days and during that time defendant admitted that Lisa was "messing with another man." They had gotten back together only two weeks before the shooting.
Prior to trial, the state gave defendant Prieur notice[3] of its intention to introduce evidence of a prior offense to prove "knowledge, system and intent." At the hearing, the state called Piper Jean Brown, a friend of Lisa's. She had also known defendant for about two years. On a Thursday evening two days before the shooting, Ms. Brown had met Lisa and defendant in a neighborhood bar and the three of them had left the bar together to walk home. They came to another bar and Ms. Brown and Lisa went in while defendant waited outside. Each came out with a beer and as they proceeded to walk down *1163 the street defendant pulled a black gun from his pants, pointed it at Lisa's face and told her, "You didn't get me no beer." Lisa replied she did not get him a beer because she had no money. Ms. Brown told defendant "don't point that gun at that girl" and he put the gun back in his pants. She testified that he held the gun to Lisa's face for about fifteen minutes while they were walking down the street and during the incident Lisa seemed afraid. The trial judge ruled the evidence admissible and Ms. Brown testified similarly at trial. The state contends the court of appeal erred in finding the admission into evidence of this testimony to be reversible error.
Generally, evidence of other acts of misconduct is not admissible; however, there are statutory and jurisprudential exceptions to this exclusionary rule, when the evidence of other acts tends to prove a material issue and has independent relevance other than showing that the defendant is a man of bad character. Even if independently relevant, the probative value of such evidence must be weighed against its prejudicial effect. State v. Germain, 433 So.2d 110 (La.1983). There are three statutory exceptions to the general rule of exclusion: acts relevant to show intent, knowledge, or system. La.R.S. 15:445, 446.[4] Evidence of other similar acts or offenses, preceding or subsequent to the charge in question, may be relevant to show the presence of intent when there is a real and contested issue of intent at trial. Germain, 433 So.2d at 118.
Defendant was charged with manslaughter in violation of La.R.S. 14:31.[5] The bill of information did not specify under which section of the manslaughter statute defendant was being charged. After the Prieur hearing, the trial judge ruled the evidence admissible under La.R.S. 14:31(2)(a).
La.R.S. 14:31(2)(a) provides that manslaughter is:
(2) A homicide committed, without any intent to cause death or great bodily harm.

(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person[.] [Emphasis added.]
Although the underlined portion of the statute does not require the state to prove that the offender intended to cause death or great bodily harm to the victim, it does require the state to prove that the homicide occurred during the commission of an intentional misdemeanor directly affecting the person. Therefore, proof of intent is required under this portion of the statute.
In the instant case, the state's theory was that defendant killed Lisa Chaney while he was engaged in an assault *1164 with a gun. While the state was not required to prove that defendant intended to kill Lisa Chaney, it had to prove that her death occurred while defendant was engaged in the perpetration of an intentional misdemeanor directly affecting Lisa, an aggravated assault. The testimony of Piper Brown relating the prior aggravated assault upon Lisa by defendant just two evenings prior to her death was highly probative of the fact that Chaney's death was committed by defendant while engaged in the perpetration of an aggravated assault on her. Moreover, the prior assault and the act which resulted in Lisa's death were similar. The earlier act was an aggravated assault whereby defendant placed a gun to the face of the victim. Two days later, the same victim was found dead of a gunshot wound to the face. Defendant's defense was that Lisa shot herself either accidentally or intentionally. By this assertion, defendant placed intent directly at issue. The evidence of the prior assault was also relevant to rebut this defense. Clearly, the probative value of this evidence outweighed its prejudicial effect. The trial judge was correct in ruling the evidence admissible.[6] The court of appeal erred in holding otherwise.[7] Accordingly, we must reverse.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and defendant's conviction and sentence are affirmed.
NOTES
[1] 519 So.2d 184 (La.App. 4th Cir.1987).
[2] 523 So.2d 218 (La.1988).
[3] State v. Prieur, 277 So.2d 126 (La.1973). In Prieur, this court held that within a reasonable time before trial the state must furnish defendant with a statement in writing of the similar acts or offenses it intends to offer in evidence.
[4] La.R.S. 15:445 provides:

In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction.
La.R.S. 15:446 provides:
When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged.
[5] La.R.S. 14:31 provides that manslaughter is:

(1) a homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Article 30 or 30.1.
Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years.
[6] Having concluded that the evidence was properly admitted under La.R.S. 14:31(2)(a), we need not decide whether the evidence would have also been admissible under any other provision of La.R.S. 14:31.
[7] Defendant also assigned as error in the court of appeal the failure of the trial judge to properly charge the jury about the limited purpose of the Prieur evidence, that is, that defendant cannot be convicted for any charge other than the one named in the indictment or one responsive thereto. See State v. Prieur, 277 So.2d 126 (La. 1973). The court of appeal did not reach this assignment. We have reviewed the jury charges and find that the trial judge properly instructed the jury on the limited purpose of the Prieur evidence. Hence, the assignment of error is without merit. While unclear whether the sufficiency of the evidence was assigned as error, we have reviewed the record and find that when viewing the evidence in the light most favorable to the prosecution a rational factfinder could have found beyond a reasonable doubt that defendant was guilty of manslaughter. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).