589 So.2d 1145 (1991)
STATE of Louisiana
v.
Moses MAYER.
No. 91-KA-311.
Court of Appeal of Louisiana, Fifth Circuit.
November 13, 1991.
*1146 Dorothy A. Pendergast, Barron C. Burmaster, Asst. Dist. Attys., Gretna, for plaintiff/appellee.
John D. Rawls, 24th Judicial District, Indigent Defender Bd., Gretna, for defendant/appellant.
Before GRISBAUM, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
On March 2, 1989 defendant, Moses Mayer, was charged by grand jury indictment with second degree murder in violation of LSA-R.S. 14:30.1. He was arraigned on April 13, 1989 and pled not guilty. After an eleven day jury trial the defendant was found guilty as charged. He was subsequently sentenced to imprisonment at hard labor for a term of life, without benefit of parole, probation or suspension of sentence. He appeals his conviction and sentence.

FACTS
On February 14, 1989, Moses Mayer and his wife, Sharyn, appeared in the 24th Judicial District Court for a domestic hearing. Defendant left the courthouse about 12:30 p.m. but Sharyn Mayer remained to speak to the judge.
Verilyn Conerly, a friend of the defendant, who supplied transportation to and from the courthouse, testified that after leaving the courthouse she accompanied the defendant to his cousin's house where he obtained a gun. The pair then went to defendant's home whereupon he changed his clothes. Subsequently they returned to the courthouse and waited in the parking lot for Sharyn Mayer to emerge.
At about 4:00 p.m. Sharyn Mayer left the courthouse and drove in the direction of her home in Gretna. The defendant, driving Verilyn Conerly's automobile, followed behind. At the intersection of Carrollwood Village Drive and Park Place, Sharyn Mayer stopped for a stop sign. The defendant pulled up behind her, got out of his vehicle, walked up to the driver's side of Sharyn's car and shot her in the head, just above the left ear. He then returned to his vehicle and sped away from the scene.
Besides Verilyn Conerly, who was a passenger in the car defendant was driving, a second eye witness to the crime testified. Barbara Leitz, who was stopped at the same stop sign said she saw defendant stop his car behind the victim's, get out, and shoot her in the head. She identified the defendant as the perpetrator and stated that a red rag tied around his head blew off and remained at the scene.
Two other witnesses, who were playing tennis at the apartment complex nearby, testified that they heard the shot and went to the victim's aid but could not identify the perpetrator. They found the red rag in the street and retrieved it for evidence.
*1147 Several days after the murder Moses Mayer turned himself in to authorities and was arrested for the murder of his wife.
Assignment of error number one:
The defendant asserts the trial court erred in allowing two ordained ministers to testify on statements allegedly made to them by the defendant. In a pre-trial motion the defendant sought to exclude testimony of Reverend Seab Morgan and Reverend Randall Gorman, asserting that any statements made to them by the defendant were protected by a ministerial privilege and were, therefore, inadmissible.
At a hearing on the motion Reverend Morgan testified that the defendant was his best friend and had been a close friend of his family for years. He further testified that when Moses came to his home on the evening of February 14, 1989, he came as a friend, and told Reverend Morgan that he followed Sharyn Mayer from the courthouse and shot her. He did not ask for forgiveness and there was no discussion of a spiritual nature. Reverend Morgan also testified that he related the story to his wife because he simply could not believe it. He admitted that as a clergyman he would not have discussed the information he got from Moses with anyone had Moses come to him as a penitent to confess and seek forgiveness.
Reverend Gorman testified that, although the defendant was not a member of his church, he enjoyed a cordial, friendly relationship with both the defendant and the victim for several years. He stated that he was told that Moses shot Sharyn. He attempted to get in touch with Moses by calling his sister, Jackie. After a brief conversation, Jackie gave the phone to Moses. Reverend Gorman's account of the conversation is that he asked Moses if he had shot his wife and Moses admitted that he had. After further questioning by Reverend Gorman, Moses said that he had "gotten rid of the gun." There was no discussion of a need for spiritual guidance or forgiveness, although Reverend Gorman did advise Moses to turn himself in to the police.
The defendant testified at the pre-trial hearing. His testimony is inconsistent with his stated grounds for exclusion of the evidence. He did not testify that he went to either of the clergymen for the purpose of confessing his crime or for seeking spiritual guidance. His testimony was that, while he spoke to both men, he made no statements concerning the murder of his wife. He denies the statements attributed to him by both clergymen. He agreed that he had spoken to both Reverend Morgan and Reverend Gorman, but denied any admission of guilt. He stated that he did not discuss any personal problems with Reverend Morgan but merely prayed with him as was their norm. He also testified that when asked about the murder by Reverend Gorman, he responded that he knew nothing about the incident. In short, defendant's testimony was not that he sought privileged spiritual advice and guidance from the reverends in their capacity as ministers of the church, but that he made no confessions to anyone.
The trial court took the matter under advisement and subsequently ruled the ministerial privilege was inapplicable in this instance. Consequently, defendant's motion to exclude the evidence was denied.
LSA-R.S. 15:477 provides for the ministerial privilege as follows:
No clergyman is permitted, without the consent of the person making the communication, to disclose any communication made to him in confidence by one seeking his spiritual advice or consolation, or any information that he may have gotten by reason of such communication.
Three cases discussing the clergyman-penitent privilege are reported in Louisiana jurisprudence.
In State v. Welch, 448 So.2d 705 (La.App. 1st Cir.1984), writ denied, 450 So.2d 952 (La.1984), the privilege was not allowed because the minister to whom the statement was made was not a "clergyman" within the meaning of the statute.
In State v. Hereford, 518 So.2d 515 (La. App. 3rd Cir.1987), it was also decided that the witness did "not appear to merit the *1148 respected professional designation" of clergyman. Furthermore, the testimony did not indicate that witness was approached for spiritual counseling.
In State v. Berry, 324 So.2d 822 (La. 1975), cert. den., 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976), the defendant, convicted of murder, objected to the introduction of the minister's testimony arguing that such testimony would violate the clergyman-penitent privilege. In Berry, on the evening of the murder, defendant went to the apartment of a sister of a minister. Present at the time were the minister, the minister's sister and a friend. The evidence showed that defendant went to the apartment to pawn a watch. After the minister's sister refused to loan him the money, he asked to speak to the minister. Defendant then told the minister that he had gotten the watch from a girl he had killed and needed $8.00 or else he might hurt someone else. The minister loaned him $8.00, took the watch and subsequently turned it over to police. After listening to this evidence outside the presence of the jury, the court determined that the privilege did not apply. In upholding the decision of the trial court, the Louisiana Supreme Court stated:
We are unable to find error in the trial court's factual appreciation that the primary purpose of this visit was not to seek spiritual advice or consolation, nor in its finding that, in the totality of circumstances presented (including that the communication was made in the presence of two other persons), the communication was not made within the requisite nature of a confidential disclosure for religious purposes of a penitent to a clergyman seeking religious consolation. 8 Wigmore on Evidence, Section 2396 (McNaughton Rev.1961).
State v. Berry, supra at p. 829.
In the instant case, the clergyman-penitent privilege is inapplicable. The totality of the circumstances presented does not indicate that statements made by the defendant are within the communications protected. Neither the clergyman nor the defendant considered the statements to be in the nature of a confidential disclosure by a man to his spiritual advisor for purposes of gaining religious guidance. In fact, the defendant himself denies that any statements were made for any reason. Thus, the trial judge properly allowed the testimony of these two witnesses. This assignment is without merit.

Assignment of error number two:
The defendant alleges the trial court erred in denying his motion for mistrial after the jury panel became tainted. The motion for mistrial was made during jury selection after a court employee, Barbara Downey, informed the trial judge that one of the prospective jurors expressed his belief that the defendant was guilty of the murder because there were other charges pending against him. The juror gleaned this information from a docket sheet containing defendant's name which was posted on a court bulletin board. He subsequently shared this information with other jurors who were standing around him.
After the trial judge informed the attorneys of the problem, defense counsel moved for a mistrial. The state argues on appeal that mistrial was not an option because the incident occurred during the jury selection before the swearing in of any jurors.
The trial court carefully conducted interviews with each prospective juror who may have been tainted by the incident. Ultimately, the four jurors who were involved in the conversation were dismissed from the panel out of an abundance of caution.
The jurors who were chosen swore to uphold the law as given to them by the trial judge. They were instructed on the presumption of innocence and on the burden of proof necessary to sustain a conviction. They were further instructed to only consider the evidence and testimony presented at trial and not to resort to extraneous facts or circumstances in reaching a verdict.
LSA-C.Cr.P. art. 787 provides:
The court may disqualify a prospective petit juror from service in a particular case when for any reason doubt exists as *1149 to the competency of the prospective juror to serve in the case.
We believe the trial court correctly addressed the problem and rendered a decision which resulted in the empanelling of an untainted jury. This assignment is without merit.

Assignment of error number three:
By his third assignment of error the defendant contends the trial judge erred in failing to restore peremptory challenges to the defense. After the denial of the previously discussed motion for mistrial, the defendant requested a grant of three additional peremptory challenges to each party. The trial court refused the defense request.
LSA-C.Cr.P. art. 799 mandates that in trials of offenses punishable by death or necessarily by imprisonment by hard labor each defendant be given twelve peremptory challenges. Since there is no provision for the grant of additional challenges, the trial court did not err in the denial of defendant's request. State v. Perry, 420 So.2d 139 (La.1982), cert. den., 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983). This assignment is without merit.

Assignment of error number four:
In his final assignment of error the defendant argues that the trial judge erred in permitting evidence of other crimes to be introduced.
In accordance with State v. Prieur, 277 So.2d 126 (La.1973), the State filed pre-trial notice of its intent to use evidence of other crimes, wrongs, or acts committed by defendant. Specifically, the State noticed its intent to introduce evidence relating to the following occurrences:
1. On or about January 27, 1989, Sharyn Q. Mayer filed a "Petition for Domestic Relief" pursuant to the provisions of LA R.S. 46:2131-LA R.S. 46:2139 wherein she sought certain protective orders from the court due to alleged abusive conduct committed upon her and her son. The conduct complained of included the use of a weapon by defendant, dangerous substances, death threats and physical abuse. An order was entered by the court prohibiting the defendant from abusing, harassing, threatening or molesting petitioner and her minor children.
2. On February 10, 1989, a rule for contempt was filed by Sharyn Q. Mayer against defendant allegeding (sic) violation of the court's order. This matter was heard on February 14, 1989. It was following this hearing that the killing of Sharyn Q. Mayer occurred.
3. Throughout their five months of marriage, the defendant has beaten the victim numerous times during which time he threatened her until she was rendered unconscious. On January 21, 1989, the defendant beat Sharyn Mayer's son Chauncy B. Williams, and put a knife to his neck. When his mother intervened, defendant struck her and threatened to harm her further. Defendant told victim and her son that if they called the police he would kill victim.
4. On February 10, 1989, defendant committed aggravated burglary of 2444 Park Lane, Gretna, Louisiana, the home of Melanie Williams and Sharyn Mayer. The defendant armed himself with a shotgun and unknown type revolver and threatened to kill subject, Williams. The defendant held Williams for approximately three and one-half hours during which time he made Williams call the job of Sharyn Mayer and questioned Williams as to what time S. Mayer got home and how she would enter the house. During the time defendant was with Williams he threatened to kill Sharyn Mayer and said there was going to be a "bloody massacre" in the house.
After a hearing on the matter the trial judge ruled that it would "disallow all other offenses or acts except the one on February 10, 1989." The defendant contends that the trial court erred in that ruling and also in admitting evidence of other crimes beyond the scope of evidence allowed by the ruling.
Initially we will consider the admissibility of evidence of the alleged aggravated burglary which occurred on February 10, 1989. Generally, evidence of other crimes is not admissible; however, when *1150 such evidence tends to prove a material issue and has independent relevance other than showing that the defendant is a man of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this exclusionary rule. State v. Thompson, 532 So.2d 1160 (La.1988). LSA-C.E. art. 404(B)(1) provides such an exception:
Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The state's theory of the case was that the defendant left the courthouse after a hearing in domestic court, obtained a gun, returned to the court, waited for and followed his wife to an intersection near her home, whereupon he intentionally murdered her. We believe evidence of the incident, which took place only four days prior to the murder, was admissible as relevant to show "plan" pursuant to C.E. art. 404(B)(1).
On the occasion at issue the defendant entered the home his wife shared with her sister, Melanie Williams, for the purpose of ascertaining information on her whereabouts and daily activities. He held his sister-in-law at gunpoint while he questioned her and made threats to kill his wife. Evidence of the February 10, 1989 incident was correctly admitted.
Defendant also claims that even if properly admitted, the evidence of the aggravated burglary should have been excluded under LSA-C.E. art. 403 because it is more prejudicial than probative. LSA-C.E. art. 403 provides as follows:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
Although evidence of another crime is always somewhat prejudicial, it cannot be said that the probative value of the evidence was outweighed by the danger of unfair prejudice to defendant. The evidence in the present case was relevant to show defendant's state of mind as well as his intent to harm and terrorize his wife. Therefore, it cannot be said, as argued by defendant, that it was more prejudicial than probative.
In this assignment, defendant also argues that the trial judge erred by allowing evidence at trial that went beyond his pre-trial ruling. More specifically, defendant contends that the trial judge erred by allowing Melanie Williams, the victim's sister, to testify regarding a threat made by defendant to his wife on January 22, 1989, in which he threatened to kill her. The trial judge denied defendant's motion for a mistrial, concluding that the testimony was admissible to show defendant's mental state. This evidence is hearsay, not evidence of other crimes. The general rule that hearsay is inadmissible is subject to certain exceptions. One such exception is provided for in LSA-C.E. art. 803(3) which reads as follows:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * * * * *
(3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), offered to prove the declarant's then existing condition or his future action. A statement of memory or belief, however, is not admissible to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's testament.
The evidence was properly admitted under that exception.
*1151 Defendant also contends that the trial judge went beyond his original pre-trial ruling by allowing the following testimony of Chauncey Williams, the victim's son, regarding his actions on February 14, 1989:
Q. What did you do on that particular morning?
A. Put on my clothes, got ready to go to school. I moved the chair away from the door which we put there to protect ourselves from Moses breaking in again.
Following this testimony, defense counsel moved for a mistrial which was denied.
A direct or indirect reference to another crime committed or alleged to have been committed by defendant, as to which evidence would not be admissible, made within the hearing of the jury by the judge, district attorney or a court official, during trial or in argument, would require a mistrial on motion of defendant. LSA-C.Cr.P. art. 770(2). However, a state witness is not a court official for purposes of LSA-C.Cr.P. art. 770; therefore, art. 770 does not apply. When the remark is made by someone other than the judge, district attorney, or other court official, such as is the case here, the proper remedy is outlined in LSA-C.Cr.P. art. 771. That article provides that a mistrial is discretionary with the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. Mistrial is a drastic remedy which is only authorized where substantial prejudice will otherwise result to the accused. State v. Smith, 418 So.2d 515, 522 (La.1982).
In the present case, the statement made by Chauncey Williams was not so prejudicial as to require a mistrial, especially in light of the overwhelming evidence of defendant's guilt. Moreover, defense counsel did not request that an admonition be given to disregard this testimony. In the absence of such a request, the trial judge need not admonish the jury. See State v. Humphrey, 544 So.2d 1188 (La.App. 5th Cir.1989), writ denied, 550 So.2d 627 (La. 1989).
We find no merit in this assignment.
For the foregoing reasons we affirm the defendant's conviction and sentence.
AFFIRMED.