670 So.2d 1316 (1996)
STATE of Louisiana
v.
Stacy STERLING.
No. 95-KA-673.
Court of Appeal of Louisiana, Fifth Circuit.
February 27, 1996.
*1318 William O'Regan, Assistant District Attorney, Edgard, for Plaintiff/Appellee.
Richard J. Holmes, Laplace, for Defendant/Appellant.
Before BOWES, GAUDIN and GRISBAUM, JJ.
AFFIRMED.
GRISBAUM, Judge.
Defendant, Stacy Sterling, appeals his conviction and sentence in this criminal matter. We affirm.
The state filed a bill of information on March 10, 1994 charging the defendant with aggravated battery in violation of LSA-R.S. 14:34. He pled not guilty at his arraignment. Subsequently, he moved for an appointment of a sanity commission and amended his plea to not guilty and not guilty by reason of insanity. The district court granted defendant's motion, and appointed Drs. Christy Montegut and Harold Ginzburg to the sanity commission.
After a sanity hearing, the court found defendant incompetent to stand trial and ordered that he receive mental health treatment. The court stayed the proceedings until such time as defendant was competent to assist in his defense. About ten months later on March 8, 1995, the court conducted another hearing after which it found that defendant was competent to proceed. Consequently, the defendant was tried before a jury of six and found to be guilty as charged. The defendant was sentenced to ten years at hard labor with credit for time served. He filed a timely motion for appeal which was granted on the same day by the trial court.

FACTS
The facts revealed at trial show that, at 4:40 a.m. on January 15, 1994, eighteen-year-old Christie Bolding was asleep in her home when she was awakened by a loud noise. She went into her living room to investigate, and discovered that the front door had been removed from its hinges, and defendant, Stacy Sterling, was standing in the doorway. Christie had known defendant most of her life, and he had at one time been her mother's live-in boyfriend. Christie testified at *1319 trial that defendant appeared to be "on something".
She asked defendant what he was doing, and he replied, "Christie, I'm going to kill you." Christie ran to the kitchen and attempted to escape through the back door, unfortunately the door was stuck and could not be opened. The defendant, armed with a knife, followed the victim. A struggle over the knife ensued, causing the victim to sustain a cut to her hand. Before she was able to escape through the front door of her home and get help from a neighbor, the victim had been stabbed a total of six times in the abdominal area, the neck and the breast.
Cheryl Frank, who lives across the street from the victim's house, was awakened by the sounds of screaming and breaking dishes coming from Christie's kitchen. She saw Christie run from the door, and heard her scream for help. Ms. Frank also saw a black man of defendant's height and build leave Christie's front door and walk away at a brisk pace. Christie ran into Ms. Frank's house and collapsed on the floor, after stating that Stacy tried to kill her.
Deputy Walter Stevens of the St. John the Baptist Parish Sheriff's Office was on patrol when he received a call regarding the stabbing. He proceeded to Ms. Frank's house, where he observed Christie lying on the floor. He questioned the victim about her attacker, and she told him Stacy Sterling had stabbed her. Deputy Marchand and Captain Moody also reported to the scene, and provided medical assistance to the victim until an ambulance arrived. The officers then went to Christie's house to investigate.
At 5:20 the same morning, the officers proceeded to defendant's house. He answered the door, and the officers observed that the defendant's right hand was wrapped in a bloody towel. When questioned as to how he had injured his hand, defendant replied that he had cut it while slicing smoked sausage. Defendant then showed them a knife with a broken handle which he said was the one with which he had cut himself. The officers placed defendant under arrest. Deputy Stevens testified that he did not seize the knife because there were several other knives in the defendant's kitchen sink, and it was impossible to determine which one, if any, was the weapon used to stab Christie Bolding.
Joann Bolding, Christie's mother, testified that during the time she had lived with defendant, he had on occasion beaten her and damaged her car. She stated that defendant always carried a knife in his pocket, and had at times threatened her with it. The day before the stabbing, defendant had walked into Joann Bolding's yard and told her, "I'm going to get you." Norma Jean Bardell, Christie's aunt, testified that she had known defendant for most of his life, and knew him to be a violent man.
Defendant's sister, Pier Davis, testified on his behalf. She stated that she had lived with defendant for some time. He had been diagnosed as schizophrenic, and he had received treatment for this condition. When he was not taking his medication, defendant could be angry and depressed.
Christie testified that she did not know why defendant had stabbed her. He had not lived with her mother for two to three years prior to the stabbing. The victim underwent surgery for her injuries, and had a three day hospital stay.

ASSIGNMENTS OF ERROR
In brief to this Court, the defendant argues three assignments of error. In the first assignment he asserts that certain photographic evidence was illegally admitted, and unfairly prejudiced the jury. Defendant complains that five photographs of the victim's injuries taken by Norma Jean Bardell were improperly admitted into evidence in that the state did not lay a proper foundation, and the photographs were introduced merely for their prejudicial value.
Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted are generally admissible. State v. Flowers, 509 So.2d 588 (La. App. 5 Cir.1987). The proper foundation for the admission of a photograph is laid when a witness having personal knowledge of the subject depicted by the photograph identifies *1320 it as such. It is well settled that a photograph need not be identified by the person who took it to be admissible. State v. Glynn, 94-0332 (La.App. 1 Cir. 4/7/95), 653 So.2d 1288, writ denied, 95-1153 (La. 10/6/95), 661 So.2d 464; State v. Hall, 549 So.2d 373 (La. App. 2 Cir.1989), writ denied, 556 So.2d 1259 (La.1990).
The state did, in fact, produce the person who took the photographs in question. Ms. Bardell, the victim's aunt, testified that she took the photos with a "six hundred plus" Kodak camera. Defendant argues that Ms. Bardell's testimony does not clarify when the photographs were taken. In that regard Ms. Bardell testified that she took the photos the day after Christie was released from the hospital, although she could not recall the exact date.
The photographs clearly shed light on the extent of the victim's injuries, a primary issue at trial. In fact, they illustrate the victim's earlier testimony. Ms. Bardell testified that the victim was indeed the person depicted in the photographs, and that the photographs accurately depicted the young woman's injuries.
The photographs in question were properly admitted, and did not unfairly prejudice defendant's case. For the foregoing reasons, this assignment of error is without merit.
In his next assignment of error the defendant asserts that the credibility of certain prosecution witnesses was destroyed due to a "break-down" of the sequestration order and the court erred in allowing the testimony. Specifically, defendant argues that state's witnesses Christie Bolding, Cheryl Frank, Joann Bolding and Norma Jean Bardell violated the sequestration order by discussing their testimony among themselves outside the courtroom and should have been disqualified.
LSA-R.S.C.Cr.P. art. 764 provides: "The exclusion of witnesses is governed by Louisiana Code of Evidence Article 615." That article provides:
A. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion. However, this Article does not authorize exclusion of:
(1) A party who is a natural person;
(2) A single officer or single employee of a party which is not a natural person designated as its representative or case agent by its attorney;
(3) A person whose presence is shown by a party to be essential to the presentation of his cause such as an expert; or
(4) The victim of the offense, upon motion of the prosecution; however, if a victim is to be exempted from the exclusion order, the court shall require that the victim give his testimony before the exemption is effective and the court shall at that time prohibit the prosecution from recalling the victim as a witness in the state's prosecution in chief and in rebuttal. The court shall also enter such other order as may appear reasonably necessary to preserve decorum and insure a fair trial, provided that the victim shall not be allowed to sit at the counsel table.
B. A court may impose sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury, or when such sanctions are insufficient, disqualification of the witness.
The purpose of the sequestration rule is to prevent witnesses from being influenced by the testimony of earlier witnesses and to strengthen the role of cross-examination in developing the facts. State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); State v. Parker, 421 So.2d 834 (La. 1982), cert. denied, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983). A trial judge may, in his discretion, determine the disqualification of a witness when a rule of sequestration has been violated. Ordinarily, the trial judge's ruling will not be disturbed absent a clear abuse of discretion. State v. Burrell, 561 So.2d 692 (La.1990), cert. denied, 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 861 *1321 (1991); State v. Allo, 510 So.2d 14 (La.App. 5 Cir.1987), writ denied, 514 So.2d 1174 (La. 1987).
During the trial, and in the presence of the jury, defense counsel stated that he had been informed by defense witness Pier Davis that several of the state's witnesses were conversing in the hallway outside the courtroom. The court then heard arguments on the matter out of the jury's presence. The defense did not move that these witnesses' testimony be stricken; rather, counsel requested that the court admonish the witnesses not to speak to each other. The judge found there had been no improper communications among the state's witnesses. She nevertheless admonished the witnesses not to discuss the case with anyone except the attorneys. She then called the jurors back to the courtroom and advised them that "there has been no impropriety on anyone's part."
The defense allegation was that Miss Davis saw state's witnesses talking to each other and pointing at her. In stating his objection, counsel did not specifically name the witnesses who were allegedly speaking to one another, nor did he offer evidence as to the subject of this alleged conversation. In fact, defense counsel submitted that, "It could be they were talking about something maybe totally unrelated to the case." It is noted that the four witnesses named by defendant were related to each other, and/or lived in the same neighborhood. It is quite possible that, if they were indeed talking to each other, the topic of their conversation was a personal matter not related to defendant's case.
It is further noted that Christie Bolding, Cheryl Frank, Norma Jean Bardell and Joann Bolding had all completed their testimony before counsel lodged his objection. Since the purpose of the sequestration rule is to assure that a witness will testify only as to his own knowledge, these witnesses would not have violated the spirit of the rule by discussing the case after all of them had given their testimony. We do not find that defendant's case was prejudiced. The trial judge did not abuse her wide discretion in refusing to strike these witnesses' testimony. This assignment is without merit.
In his final assignment of error the defendant argues the jury was prejudiced with the knowledge of the defendant's prior criminal record when the state ignored an objection by the defendant's counsel which was sustained. By this assignment, defendant contends that the prosecutor improperly questioned defense witness Pier Davis regarding defendant's prior arrests and convictions. Defendant appears to concede the relevance of this evidence, but argues that, pursuant to LSA-C.E. art. 403, the prejudicial impact of this evidence outweighed its probative value.
Generally, other crimes evidence is not admissible. However, when such evidence tends to prove a material issue and has independent relevance other than showing that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this exclusionary rule. State v. Bourque, 622 So.2d 198, 233 (La.1993), State v. Thompson, 532 So.2d 1160 (La.1988); State v. Mayer, 589 So.2d 1145 (La.App. 5 Cir.1991), writ denied 609 So.2d 251 (La.1992). LSA-C.E. art. 404(B)(1) provides such an exception:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
State v. Prieur, 277 So.2d 126 (La. 1973), establishes the requirements for introduction of other crimes evidence. See also LSA-C.E. art. 1103, (repealed by Acts 1995, *1322 No. 1300 Sec. 2).[1] In State v. Hanks, 593 So.2d 971, 973-974 (La.App.5 Cir.1992), this court delineated these requirements, quoting from Prieur as follows:
In State v. Prieur, supra, the Louisiana Supreme Court established a five-part procedure for the admission and use of other crimes evidence:
(1) The State shall within a reasonable time before trial furnish in writing to the defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. No such notice is required as to evidence of offenses which are a part of the res gestae, or convictions used to impeach defendant's testimony.
(2) In the written statement the State shall specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses.
(3) Prerequisite to the admissibility of the evidence is a showing by the State that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant's bad character or his propensity for bad behavior, and that it serves the actual purpose for which it is offered.
(4) When the evidence is admitted before the jury, the court, if requested by defense counsel, shall charge the jury as to the limited purpose for which the evidence is received and is to be considered.
(5) Moreover, the final charge to the jury shall contain a charge of the limited purpose for which the evidence was received, and the court shall at this time advise the jury that the defendant cannot be convicted for any charge other than the one named in the indictment or one responsive thereto. 277 So.2d at 130.
Defense witness, Ms. Davis, testified that defendant had lived with her up to the day of his arrest. Defendant had been diagnosed as a schizophrenic, and Ms. Davis had accompanied him to the mental health clinic for his treatment. She testified that defendant was being medicated for his condition, and that his behavior was normal as long as he took the medication. However, during the period before the stabbing, defendant was not taking his medication as directed. Defendant was prone to anger and depression, and at times became violent.
On cross-examination, the prosecutor questioned Ms. Davis about defendant's "trouble with the law." The following colloquy ensued:
A. He was going to the mental health clinic, right. And that's when he started getting into things.
Q. Like what?
A. The only thing really he got into was this, what this incident that happened. And the other incident that happened, he never
Q. This incident is the Christie Bolding stabbing?
A. Right.
Q. And then what other incident are you talking about?
A. I don't know no other incident he got into besides this when he was, when they found out he was a schizophrenia at the mental health clinic.
Q. I mean he's been arrested several times for different things
A. Like for what? The only
MR. HOLMES [defense counsel]:
Objection, your honor.
EXAMINATION BY MR. O'REGAN [prosecutor]:
A. He never been arrested.

*1323 THE COURT:
Wait, ma'am. When somebody objects
THE WITNESS:
Oh, okay.
THE COURT:
you don't answer. Okay? Mr. Holmes.
MR. HOLMES:
There's been no evidence, only thing, to suggest as to the criminal record. And I resent the insinuation by Mr. O'Regan as to several times or so forth, he said. There's no truth in that at all.
MR. O'REGAN:
I've got a lot more insinuations here, Judge. Be happy to go into them.
THE COURT:
I'm going to sustain the objection.
EXAMINATION BY MR. O'REGAN:
Q. Is your brother a convicted felon?
A. Yeah. He, this was a way, years back, that they say he had passed some drugs to an undercover. And that's the, that's the only thing they had. And that was before they even found out he was schizophrenia.
Defense counsel re-urged his objection. There was a sidebar discussion off the record, and then the prosecutor continued his questioning as follows:
Q. Miss Davis, you are aware that your brother is currently serving a five year probation for distribution of cocaine, is that correct?
A. Right.
The record in the instant case does not show that the state complied with any of the procedural requirements of Prieur. No prior notice was given to the defense, and the state did not offer any proof that the other crimes or bad acts were actually committed by defendant. Moreover, the other bad acts and crimes put forth by the prosecutor did not satisfy any of the requirements of 404(B)(1). The state did not show any correlation between defendant's past conviction on a drug offense and the instant offense of aggravated battery.[2]
When a defendant chooses to place his character at issue by introducing evidence of his good character, the state is entitled to introduce evidence of defendant's bad character in rebuttal and may cross-examine defendant's character witness about his or her knowledge of defendant's particular conduct, prior arrests, or other acts relevant to the moral qualities pertinent to defendant's crime. State v. Rault, 445 So.2d 1203 (La.1984), cert. denied, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984); State v. Kelly, 576 So.2d 111 (La.App. 2 Cir.1991), writ denied, 580 So.2d 666 (La.1991); State v. Miller, 489 So.2d 268 (La.App. 4 Cir.1986), writ denied, 496 So.2d 1030 (La.1986). State v. Johnson, 389 So.2d 372 (La.1980), delineates certain safeguards regulating the state's examination of a character witness. The trial judge must conduct a hearing out of the presence of the jury to determine whether the prosecutor has sufficient grounds for cross-examining the character witness as to defendant's prior bad acts or crimes, and that the examination will be conducted in the proper form; that is, that questions are preceded by "have you heard," rather than "do you know." If the court determines that the interrogation should proceed, the jury should be informed of its exact purpose either at the conclusion of the cross-examination or in the jury charge. Id. at 376.
We do not believe this exception to the general rule of inadmissibility applies in the instant case. Ms. Davis' testimony was not character evidence offered to show that defendant was not the type of person who could have committed the crime charged. Rather, her testimony was of a factual nature and was intended to bolster the defendant's insanity defense. Additionally, none of the procedural requirements of Johnson were met. The court did not hold the requisite hearing, and the prosecutor did not frame his questions in the form dictated by Johnson.
It is unclear just what purpose the state had in introducing the other crimes evidence. The evidence clearly does not fall under either the Prieur exception or the exception *1324 for impeachment of a character witness. We believe the defendant's point is well taken, that the state's intention was simply to show that defendant was a bad person. Other crimes evidence is considered prejudicial, and thus inadmissible when used for such a purpose.
The appropriate remedies for the improper admission of other crimes evidence are found in LSA-C.Cr.P. art. 770, which provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
Although defense counsel lodged an objection to the state's improper introduction of other crimes evidence, he did not request a mistrial or an admonition to the jury. When the prosecutor disregarded the court's ruling sustaining the defense objection and instead continued his improper questioning, defense counsel did not object on the record. In failing to avail himself of the procedural remedies under Article 770, defendant waived the error. Official Revision Comment (b) to Article 770, provides: "a failure to move for a mistrial is a waiver of the error, since this article requires a motion by the defendant." Defendant is procedurally barred from raising this issue herein. Consequently, we find no merit in this assignment.
For the forgoing reasons the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] LSA-C.E. art. 1103 provided as follows:

Article 404(B) and 104(A) neither codifies nor affects the law of other crimes evidence, as set forth in State v. Prieur, 277 So.2d 126 (La. 1973), State v. Davis, 449 So.2d 466 (La. 1984) and State v. Moore, 278 So.2d 781 (La. 1973) and their progeny, as regards the notice requirement and the clear and convincing evidence standard in regard to other crimes evidence. Those cases are law and apply to Article 404(B) and 104(A), unless modified by subsequent state jurisprudential development.
The repeal of this article does not appear to change the law in regards to Prieur evidence. The Historical and Statutory Notes to the article advise to "see now, generally, C.E. art. 404."
[2] It is noted that the victim testified that defendant appeared to have been "on something" at the time he attacked her, and that she knew him to be a drug user.